IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOY ELLISON, on behalf of a class, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:17-cv-02236 |
| FULLETT ROSENLUND ANDERSON P.C., | ) Judge Hon: Samuel Der-Yeghiayan |
| Defendant. | ) Magistrate Judge: Michael T. Mason |

**DEFENDANT FULLETT ROSENLUND ANDERSON P.C.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, Fullett Rosenlund Anderson P.C. ("FRA"), through its counsel, David M. Schultz, Jason Santos, and Louis J. Manetti, Jr., move this court pursuant to Federal Rule of Civil Procedure 56 for summary judgment on all counts of Plaintiff's complaint, and in support of its motion, states as follows:

**INTRODUCTION**

This case involves a demand for possession made pursuant to Illinois' Forcible Entry and Detainer Act. FRA initiated a neighborhood association's rights under the eviction statute by sending a letter entitled "In Rem Notice and Demand for Possession." The letter stated that it was "the property's notice" that the property was in default of its obligation to the association for "its" proportionate share of the expenses. The letter then demanded "of the property" the amount stated, and asserted that if the sums were not paid the association could take possession of the property after the demand period expired.

Joy Ellison sued FRA under the Fair Debt Collection Practices Act ("FDCPA"). She alleged that she believed the letter demanded money from her personally and so it made false or

misleading representations, and that it did not meet the requirements of a debt validation notice under FDCPA section 1692g.

Summary judgment should be granted to FRA on Ellison's sole count under the FDCPA. First, the letter was not governed by the FDCPA because it was not made in connection with debt collection. It was made as an in rem demand from the property and demand for possession. Second, the letter was not false or misleading because it accurately explained what needed to be done to prevent the association from taking possession of the property. Finally, the letter was sent in compliance with Illinois law about evictions, and interpreting the letter as violating the FDCPA raises constitutional concerns.

## **SUMMARY OF UNDISPUTED FACTS**

At all relevant times, Plaintiff Joy Ellison owned a single family home in Gurnee, Illinois, that was run by an association with the ability to charge monthly assessments. (Dkt. No. 32, Ex. 2, Pl. Dep., at 14:24-15:2; 19:1-2; 19:20-23.) Specifically, under the bylaws the association was responsible for the exterior of all the properties. (*Id.* at 22:14-16.) Ellison filed a Chapter 7 bankruptcy petition, and in February, 2016, the court entered a bankruptcy discharge. (Dkt. No. 1 ¶ 17; Dkt. No. 32, Ex. 2, Pl. Dep., at 53:13; Dkt. No. 32, Ex. 3, Bankr. Order.)

On March 7, 2017, Defendant FRA sent a letter to the property. (Dkt. No. 1 ¶ 18; Ex. 2, Pl. Dep., at 47:18.) The letter was entitled "In Rem Notice and Demand for Possession." (Dkt. No. 32, Ex. 2-1.) The letter was addressed to the property address, and began by declaring that "THIS IS THE PROPERTY'S NOTICE" that association dues were delinquent. (*Id.*) The letter stated that if the sums demanded "of the property" were not paid within 34 days, the association could seek possession of the property. (*Id.*)

## SUMMARY OF ALLEGATIONS

On March 23, 2017, Ellison filed this lawsuit. (Ex. 1, Pl. Compl. ¶¶ 1-41.) Ellison alleged a single count for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692pp. (*Id.* ¶¶ 30-33.) Specifically, Ellison alleged that the March 7, 2017 letter violated various sections of 1692e and section 1692g of the FDCPA because she believed that the letter was seeking money directly from her. (*Id.*)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Liu v. T&H Mach., Inc.*, 191 F.3d 790, 794 (7th Cir. 1999) (citing *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999)). The non-moving party may not rest only on the allegations set forth in the pleadings, but must come forward with specific facts sufficient to raise a genuine issue for trial. *Id.* at 794-95 (citing *Shermer v. Ill. Dep't of Transp.*, 171 F.3d 475, 477 (7th Cir. 1999)).

## ARGUMENT

**I.    The FDCPA is inapplicable to the letter because it was not made in connection with collection of a "debt" as defined in the Act.**

The March 7, 2017 letter was not governed by the FDCPA because it was not a communication sent in connection with debt collection. To establish liability under the FDCPA, the plaintiff must show: (1) that they are a consumer within the meaning given in the statute; (2) the debt arises out of a transaction entered primarily for personal, family, or household purposes; (3) the defendant collecting the debt is a "debt collector" under the statute; and (4) the defendant violated a provision of the FDCPA. *Paz v. Portfolio Recovery Assocs., LLC*, No. 15 C 5073, 2016 U.S. Dist. LEXIS 160779, at *7-8 (N.D. Ill. Nov. 21, 2016) (citing *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 938-39 (N.D. Ohio 2009)).

3

"[T]he FDCPA regulates a communication from a debt collector only if the communication is made 'in connection with the collection of any debt.'" *Preuher v. Seterus, LLC*, No. 14 C 6140, 2014 U.S. Dist. LEXIS 171139, at *4 (N.D. Ill. Dec. 11, 2014) (citing 15 U.S.C. § 1692). Debt is any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money that is the subject of the transaction is primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5); *see also Ho v. Recontrust Co.*, NA, 858 F.3d 568, 571 (9th Cir. 2017) (noting that "[f]or the purposes of the FDCPA, the word 'debt' is synonymous with 'money.'").

Courts weigh several factors to determine whether a communication is made in connection with the collection of a debt, including: the presence or absence of a demand for payment, the nature of the parties' relationship, and the purpose and context of the communications. *Id.* (citing *Gburek v. Litton Loan Servicing, LP*, 614 F.3d 380, 385 (7th Cir. 2010)). The unsophisticated consumer possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence and is capable of making basic logical deductions and inferences. *Carlvin v. Ditech Fin., LLC*, 237 F. Supp. 3d 753, 756 (N.D. Ill. 2017) (quoting *Gruber v. Creditors' Protection Serv., Inc.*, 742 F.3d 271, 273-74 (7th Cir. 2014)); *see also Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000)) (stating that the notion of an unsophisticated consumer preserves "a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care.").

The factors to determine whether the March 7, 2017 letter was in connection with debt demonstrate the FDCPA is not applicable. First, the letter did not demand payment from Ellison.

The title of the letter was "In Rem Notice and Demand for Possession." (Dkt. No. 32, Ex. 2-1.) It was addressed to the address at "North Old Creek Court," and the letter began by stating "THIS IS THE PROPERTY'S NOTICE" that "the property is in default of its ongoing obligation" due to the association "for its proportionate share of the expenses" of the association. (*Id.*) At the beginning of the second paragraph, the letter specified that "payment in full of the amount stated above is *demanded of the property* . . . ." (*Id.* (emphasis added).) It reiterated that only full payment would invalidate the demand "unless the property claiming possession" agreed in writing to withdraw the demand in exchange for partial payment. (*Id.*) Indeed, at every point in the letter where it indicates who it is seeking payment from, the letter either specifies "the property" or else uses the impersonal pronoun "it," indicating that the letter (and the demand) is not directed to a person. (*Id.*) Thus, the letter did not demand payment from Ellison.

Second, the relationship between Ellison and the association on whose behalf the letter was sent indicates that the letter was not sent in connection with debt collection. The relationship between Ellison and the neighborhood association was that of owner and governing association with concurrent rights to the property. The Forcible Entry and Detainer Act specifies that a person entitled to possession of land can be restored to possession if the property is subject to provisions requiring the unit owner to pay for common expenses and the unit owner fails to pay. 735 ILCS 5/9-102(a)(8). Ellison explained that the property was governed by an association that could charge monthly assessments, (Dkt. No. 32, Ex. 2, Pl. Dep., at 14:24-15:2; 19:1-2; 19:20-23), and further, that under the bylaws the association was responsible for all the exterior of all the properties (*Id.* at 22:14-16). The subject property, owned by Ellison, is subject to interests of the association, and the association has the authority to take possession of the property in certain

300976199v1 0997622

circumstances. That relationship should inform that the letter was not in connection with debt collection.

Finally, the purpose and context of the communication shows that the letter was not sent in connection with debt collection. Where the object of a communication is to retake a security, the sender is not attempting to collect a debt. *See, e.g., Ho v. Recontrust Co., NA*, 858 F.3d 568, 572 (9th Cir. 2017). It is not debt collection, even if the person at risk of losing property is prompted to pay:

> The prospect of having property repossessed may, of course, be an inducement to pay off a debt. But that inducement exists by virtue of the lien regardless of whether foreclosure proceedings actually commence. The fear of having your car impounded may induce you to pay off a stack of accumulated parking tickets, but that doesn't make the guy with the tow truck a debt collector.

*Id.* The court in *Ho* emphasized that if the mere pressure to pay money was sufficient to transform the enforcement of security interests into debt collection, then all security enforcers would be debt collectors, which would render other portions of the FDCPA meaningless. *Id.* at 574; *see also Hahn v. Anselmo Lindberg Oliver LLC*, No. 16 cv 6908, 2017 U.S. Dist. LEXIS 48810, at *8-9 (N.D. Ill. Mar. 31, 2017) (emphasis in original) (holding that the defendant did not violate the FDCPA because the underlying foreclosure action was not an attempt to collect a debt, "regardless of Mr. Hahn's bankruptcy[,]" and that, in any event, the foreclosure proceeding was "not an attempt to collect a debt from *Mr.* Hahn, so it could not have been an unfair or deceptive attempt to evade the automatic stay imposed by Mr. Hahn's bankruptcy."). The March 7, 2017 letter was the first step of a statutorily-authorized process where the association could take possession of the property. *See* 735 ILCS 5/9-104.1. In other words, the purpose of the communication was to exercise the association's lien interest in the property. The purpose and

context of the letter shows it was sent to invoke the association's rights in the property—not to collect a debt from Ellison.

Ellison's interpretation of the letter is based on her idiosyncratic and incorrect belief that, after her bankruptcy, nobody could contact her about those obligations again—even the obligations that were liens. As a matter of law, courts will not entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation of a communication. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006) (citing *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005)). Plaintiffs fail to establish an FDCPA claim when their interpretation "unreasonably found meaning in the language that is plainly absent." *Everett v. Fin. Recovery Servs.*, No. 16 cv 1806, 2016 U.S. Dist. LEXIS 163233, at *16 (S.D. Ind. Nov. 28, 2016); *see also Lindley v. TRS Recovery Assocs.*, No. 2:12 cv 109, 2012 U.S. Dist. LEXIS 175935, at *6 (S.D. Tex. Dec. 12, 2012) (citing *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012)) (noting that "[t]he FDCPA does not protect consumers who intentionally distort communications or make irrational claims."). Ellison stated that her bankruptcy attorney and the judge told her that she no longer needed to pay the debts that she listed in the bankruptcy. (Dkt. No. 32, Ex. 2, Pl. Dep., at 54:4-8; 89:19-23.) But she also swore that she believed that nobody could contact her about the debt that was discharged: that "there would be no debt collectors that would legally be allowed to contact me from that point on[.]" (Ex. 2, Pl. Dep., at 56:23-57:4; 90:5-7.) Given the content of her bankruptcy discharge, that belief was unreasonable. Ellison's bankruptcy discharge stated that creditors cannot collect discharged debts, but lien holders may be able to enforce a claim:

> However, a creditor with a lien may enforce a claim against the debtor's property subject to that lien unless the lien was avoided or eliminated.

7

(Ex. 3, Bankr. Order.)[1] Thus, her discharge paperwork alerted her to the fact that certain lien claimants may still enforce rights against the property, and that's precisely what the March 7, 2017 letter did. Ellison's bizarre reading of the letter is highlighted by the fact that she later testified at her deposition that the letter was misleading because she did not know what the phrase "the property" meant. (Dkt. No. 32, Ex. 2, Pl. Dep., at 93:19-23.) Much like the plaintiff in *Everett*, Ellison's interpretation of the letter unreasonably finds meaning that is plainly absent from the letter itself. Ellison's interpretation of the letter stems from an unreasonable expectation that is flatly contradicted by the documents she received in her bankruptcy and insists on the inability to understand basic terms like "the property." Her reading of the letter is idiosyncratic, unreasonable, and should be rejected.

## II. Ellison cannot establish an FDCPA violation because she cannot show that she is a consumer under the statute.

Judgment is also appropriate in FRA's favor because Ellison cannot establish that she was a consumer under the FDCPA. A consumer is a natural person obligated or allegedly obligated to pay any debt. *Todd v. Collecto, Inc.*, 731 F.3d 734, 736 (7th Cir. 2013) (citing 15 U.S.C. § 1692a(3)). Ellison cannot establish that she is a consumer under the FDCPA because she was not obligated or allegedly obligated to pay any debt. She was not obligated to pay any debt because in February, 2016, she received a bankruptcy discharge. (Dkt. No. 32, Ex. 3, Bankr. Order.) And, for the reasons stated above, she was not allegedly obligated to pay any debt because the letter was directed to the *property's* continuing obligations to the association—not Ellison's (Dkt. No. 32, Ex. 2-1.) Thus, aside from the letter not being in connection with debt

---

[1] This Court can take judicial notice of bankruptcy filings and orders. *See David v. Wal-Mart Stores, Inc.*, No. 11 C 8833, 2014 U.S. Dist. LEXIS 151241, at *2 (N.D. Ill. Oct. 24, 2014) (citing *Kimble v. Donahoe*, 511 F. App'x 573, 575 n.2 (7th Cir. 2013)).

300976199v1 0997622

collection, judgment is proper in FRA's favor because Ellison cannot establish that she is a consumer under the FDCPA.

### III. The letter did not violate the FDCPA because it accurately explained what needed to be done to avoid losing possession.

Aside from the fact that the March 7, 2017 letter did not fall under the FDCPA because it was not sent in connection with debt collection, the letter did not violate the FDCPA because it accurately described the steps occupants of the property needed to take to retain possession under the Illinois Forcible Entry and Detainer Act. Accurate and truthful communications do not violate the FDCPA. For instance, in *Everett v. Financial Recovery Services*, the defendant sent the plaintiff a letter containing language that an accepted settlement "may have tax consequences." No. 16 cv 1806, 2016 U.S. Dist. LEXIS 163233, at *1 (S.D. Ind. Nov. 28, 2016). The plaintiff sued and claimed that the letter violated the FDCPA because the language was deceptive or misleading. *Id.* at *4-5. The court disagreed, and held that the language was "an accurate representation of the law." *Id.* at *17. It similarly held that the letter did not harass or threaten because "it is a true and accurate statement." *Id.* at *20; see also *Remmington v. Fin. Recovery Servs.*, No. 3-16-cv-865, 2017 U.S. Dist. LEXIS 36637, at *11 (D. Conn. Mar. 15, 2017) (holding that a letter stating that settlement "may" have tax consequences did not violate the FDCPA because it was an accurate statement and "[i]t would take a bizarre or idiosyncratic interpretation by the least sophisticated consumer to conclude that this true statement violates the FDCPA.").

In a similar way, the March 7, 2017 letter did not violate the FDCPA because it accurately explained what occupants needed to do to retain possession of the property. To prevent the association from utilizing its security interest in the property, the occupants needed to pay the amount due to the association within the time provided. *See* 735 ILCS 5/9-104.1(a). The

9

March 7, 2017 letter served that purpose: it let any occupant know that if the sums due to the association were not paid within 34 days, the association could seek possession. (Ex. 2-1.) Like the letters in *Everett* and *Remmington*, the letter did not violate the FDCPA because it accurately explained what occupants needed to do to retain possession of the property. And, notably, if the letter had implied that occupants who had obtained a bankruptcy discharge were absolved from paying the amounts due to the association would itself have been potentially misleading because it would not have accurately stated what needed to be done to prevent the association from taking possession of the property.

Indeed, Ellison articulated at her deposition that she knew that the association was attempting to enforce a lien. For instance, she expounds on her statement that she was working with her mortgage servicer by stating, "[t]he bank said that if the lien was taken off the property by the association, then we could move forward and try to work something out with the house." (Dkt. No. 32, Ex. 2, Pl. Dep., at 95:19-20.) And, at one point in the deposition, the following exchange showed that she knew she was not personally liable for the lien amount:

> Q. Did you pay this amount [stated in the March 7, 2017 letter]?
>
> A. No.
>
> Q. Why not?
>
> A. Because I don't owe it, but the bank was trying to get the lien off the property—that's all I'm telling you[.]

(*Id.* at 71:22-24.) Interpreting the letter as seeking payment directly from Ellison adds language and meaning to the letter that simply is not there.

As a corollary, given the letter's purpose of explaining what must be done to prevent the association from exercising its security interest in the property, the letter could not materially impact Ellison's decisions. Materiality is an element of any federal claim based on a false or

10

misleading statement. *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) (citing *Carter v. U.S.*, 530 U.S. 255 (2000)). This applies to FDCPA claims of a false or misleading statement under section 1692e, because the FDCPA is designed to provide information that helps consumers choose intelligently, and "by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Id.* at 757-58 (citing *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1056 (8th Cir. 2002)).

To be actionable a misleading statement must have the ability to influence a consumer's decision to pay. *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011) (citing *Hahn*, 557 F.3d at 757). Ellison claims that the letter violated the FDCPA because she believed that it was seeking money from her personally. (Dkt. No. 1 ¶ 31; Dkt. No. 32, Ex. 2, Pl. Dep., at 67:17-21.) But regardless of whether the letter made Ellison believe it was demanding money from her personally, her decisions remained the same: if the money were not paid, the association would have the right to take possession of the property as against every occupant, including Ellison. *See* 735 ILCS 5/9-110. In fact, Ellison testified at her deposition that she did not intend to pay the amount referenced in the letter. (Dkt. No. 32, Ex. 2, Pl. Dep., at 65:19-21.) And the letter ultimately did not impact her decision because seven months after the letter was sent Ellison entered into an agreed judgment and order for possession in the resulting Forcible Entry and Detainer lawsuit. (Dkt. No. 32, Ex. 4, Agreed Order for J.) Thus, Ellison's claim under section 1692e of the FDCPA must fail.

### IV. FRA's actions complied with Illinois state law governing evictions; interpreting the letter to violate the FDCPA raises serious constitutional concerns.

FRA's actions complied with Illinois state law under the Forcible Entry and Detainer Act—thus, there could be no FDCPA violation. Plus, interpreting the letter as violating the FDCPA raises serious constitutional problems. People can take statutorily-required action to

enforce lien interests without offending the FDCPA. For example, in *Ho v. Recontrust Co., NA*, the defendant initiated a non-judicial foreclosure by sending a notice of default and other foreclosure notices to the plaintiff. 858 F.3d 568, 570 (9th Cir. 2017). The plaintiff sued the defendant for FDCPA violations. *Id.* at 571. The Ninth Circuit held that complying with the statutory requirements did not violate the FDCPA: "[t]he right to 'enforce' the security interest necessarily implies the right to send the required notices; to hold otherwise would divorce the notices from their context." *Id.* at 573. The FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law. *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007); *see also Bentrud v. Bowman*, 794 F.3d 871, 875 (7th Cir. 2015); *Carbone v. Caliber Home Loans, Inc.*, No. 15 cv 5190, 2017 U.S. Dist. LEXIS 151810, at *4 (E.D.N.Y. Sept. 19, 2017) (holding that pre-foreclosure notices that sought to enforce rights in security interests did not fall under the FDCPA because "New York law requires that these notices be disseminated to protect homeowners[,]" and that "Caliber sent its notice to meet statutory requirements, not to collect any debt.").

The March 7, 2017 letter did not violate the FDCPA because sending the letter complied with Illinois law about how associations governing homes and condominiums assert their lien interests. The Illinois Forcible Entry and Detainer Act requires a notice and demand to be sent for the association to be restored to possession. 735 ILCS 5/9-102(a)(8). The only way the court acquires subject matter jurisdiction to adjudicate possession is by sending the notice and demand. *Courts of Northbrook Condominium Ass'n v. Bhutani*, 7 N.E.3d 839, 846-47 (Ill. App. Ct. 2014). And the notice and demand has its own statutorily-mandated components. Specifically, to be effective, the notice and demand must: (1) state the unpaid amount; (2) state the time period when the unpaid amount was due; and (3) give at least 30 days to satisfy the terms of the

300976199v1 0997622

demand. 735 ILCS 5/9-104.1(a). The March 7, 2017 letter needed to contain specific information and demands to be effective under section 104.1 of the Illinois Forcible Entry and Detainer Act. FRA sent the letter as the first step in securing its client's legal right to possess the property—it *needed* to in order to invoke is possessory rights in the property. Complying with state law cannot give rise to an FDCPA violation.

Aside from the fact that sending the letter complied with Illinois law, interpreting the letter as violating the FDCPA raises constitutional concerns. For example, in *Ho*, the court recognized that applying the FDCPA to statutorily-required non-judicial foreclosure notices would frustrate trustees' ability to comply with the statutes governing non-judicial foreclosure. *Id.* at 575. It noted: "[w]hen one interpretation of an ambiguous federal statute would create a conflict with state foreclosure law and another interpretation would not, respect for our federal system counsels in favor of the latter." *Id.* at 576. The reluctance to accept an interpretation of a federal statute that conflicts with state law "flows naturally from the fact that, when Congress legislates 'in a field which the States have traditionally occupied,' federal courts 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.* (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

"Where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (citing *NLRB v. Bishop of Chi., 440 U.S.*, 490, 499-501, 504 (1979)). The court in *Ho* concluded that "we are hesitant to

13

construe federal law in a manner that interferes with California's system for conducting non-judicial foreclosures." *Ho*, 858 F.3d at 576-77.

Because the March 7, 2017 letter complied with Illinois law, interpreting the letter as violating the FDCPA because it contained the statutorily-mandated language raises constitutional concerns. Similarly to the facts in *Ho*, if FRA's actions potentially violate the FDCPA, then the federal statute naturally frustrates entities' ability to send statutorily-required notices. And, as the court did in *Ho*, this Court should not interpret the FDCPA in a way that frustrates parties' ability to invoke statutory mechanisms to enforce rights.

Nor did the letter fall under the FDCPA because it contained a warning under the Fair Debt Collection Practices Act. For example, in *Carbone*, the notices seeking to enforce the defendant's security interest in the property contained language stating: "This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose." *Carbone*, 2017 U.S. Dist. LEXIS 151810, at *2. After determining that the letters were not debt collection, the court noted: "[o]f course, [the defendant's] Pre-Foreclosure Notice contained debt-demand language . . . . This statement, however, does not convert the non-judicial foreclosure into an attempt to collect a debt under the FDCPA." *Id.* at *4-5 (quoting *Evalobo v. Aldridge Pite, LLP*, No. 16-cv-539, 2016 U.S. Dist. LEXIS 177763, at *5 (D. Nev. Dec. 20, 2016)) (internal quotations omitted). Similarly, in this case, the letter was sent to comply with statutory requirements to secure possession of property—not to demand money from Ellison. The inclusion of a debt collection warning on the letter did not transform the letter into one seeking money directly from Ellison. (Dkt. No. 1-1 at 11.)

In sum, the March 7, 2017 letter complied with Illinois law about what type of letter must be sent to invoke an association's possessory rights in the property so it could not give rise to an

FDCPA violation, and Ellison's interpretation of the letter raises serious constitutional concerns about entities' right to initiate procedures to take possession of certain property.

## CONCLUSION

FRA sent a letter that explicitly sought past due amounts only from the property based on "its" failure to pay. And it needed to send this letter to initiate proceedings for possession of the property under Illinois law—possession that Ellison ultimately agreed to. The letter did not fall under the FDCPA, and, in any event, it provided accurate and statutorily-required information about how occupants could retain possession of the property. Thus, summary judgment should be granted in FRA's favor.

WHEREFORE, Defendant Fullett Rosenlund Anderson P.C. respectfully requests that the Court grant judgment in its favor and against Plaintiff, and/or grant any other relief to the Defendant that is equitable and just.

Respectfully submitted on behalf of Defendant, Fullett Rosenlund Anderson P.C.

*/s/ Louis J. Manetti, Jr.*
David M. Schultz
Jason Santos
Louis J. Manetti, Jr.
HINSHAW & CULBERTSON, LLP
222 N. LaSalle, Suite #300
Chicago, IL 60601
Tel: 312-704-3000
dschultz@hinshawlaw.ocm
jsantos@hinshawlaw.com
lmanetti@hinshawlaw.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on January 19, 2018 I electronically filed Defendant, Fullett Rosenlund Anderson P.C.'s Memorandum in Support of Summary Judgment with the Clerk of the Court using the CM/ECF system, reflecting service to be served upon all parties of record.

                                                 */s/ Louis J. Manetti, Jr.*

300976199v1 0997622