IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOY ELLISON, on behalf of a class, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:17-cv-02236 |
| v. ) | |
| ) | Judge Hon: Harry D. Leinenweber |
| FULLETT ROSENLUND ANDERSON P.C., ) | |
| ) | Magistrate Judge: Michael T. Mason |
| Defendant. ) | |

**DEFENDANT FULLETT ROSENLUND ANDERSON P.C.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, Fullett Rosenlund Anderson P.C. ("FRA"), through its counsel, David M. Schultz, Jason Santos, and Louis J. Manetti, Jr., and in reply in support of its motion for summary judgment, states as follows:

**ARGUMENT**

**I. Summary judgment should be entered in FRA's favor because the letter at issue is plainly not misleading; Ellison does not provide any extrinsic proof that a significant fraction of the population would in fact be misled by the letter; and her interpretation of the letter, even if accurate, did not materially impact Ellison's options regarding the property.**

*A. The letter is plainly not misleading.*

The letter in this case is plainly not misleading. It was directed to—and explicitly seeks obligations from—the property. Ellison argues in response that the letter violated the Fair Debt Collection Practices Act ("FDCPA") because it "demanded payment." (Pl. Resp., Dkt. No. 40 at 1, 3-7.) But this argument ignores the plain and inescapable fact that the letter did not demand payment *from Ellison*: it's object and the target of its stated obligations was explicitly and repeatedly the property. Again, the body of the letter began by stating, in all capital letters, that

"THIS IS THE PROPERTY'S NOTICE" that the neighborhood association's records showed that "*the property* [was] in default of *its* ongoing payment obligation," and "for *its* proportionate share of the expenses . . . ." (Def. Reply to Pl. Statement of Add'l Facts, ¶ 4, Dkt. No. 32-2 at 49) (italics added); *see also Folsom v. Summer, Locatell & Co.*, 83 S.E.2d 855, 856 (Ga. App. Ct. 1954) (noting that "we all have at our disposal the use of the impersonal pronoun 'it', the very existence of which in our grammar is to describe nonnatural persons and impersonal objects."). The letter continued that "[t]his is *its* NOTICE that payment in full of the amount stated above is demanded *of the property* . . . ." (Def. Reply to Pl. Statement of Add'l Facts, ¶ 3, Dkt. No. 32-2 at 49) (italics added). In all, the letter makes seven distinct references to "the property" or "it" being responsible for the obligations to the association. And the letter does not state that Ellison owed money or was responsible for the obligations expressed in the letter. Her interpretation, in contrast, relies on language that is not present in the letter: for example, she insists that the letter "was addressed to Ellison." (Pl. Resp., Dkt. No. 40.) Not so—the letter was explicitly addressed to and directed to the property.

Furthermore, Ellison mischaracterizes FRA's argument about needing technical knowledge to prevent a violation. In response, Ellison declares that "[a]ccording to FRA, Ellison should have known [the letter was not directed to her] due to FRA's use of the legal term 'In Rem' at the outset of the Notice and due to FRA's reference to 'the property' throughout the letter." (Pl. Resp., Dkt. No. 40 at 7-8.) But FRA did not argue that there was no FDCPA violation because Ellison should have understood some technical or legal knowledge. Instead, it argued that "the letter did not demand payment from Ellison[,]" based on the plain language of the letter. (Def. Mem. Summ. J., Dkt. No. 33 at 5.) And "the property" is not a technical term that required special knowledge to decipher in the context of the letter. (Def. Reply to Pl.

2

Statement of Add'l Facts, ¶¶ 3-4, Dkt. No. 32-2 at 49.) Thus, Ellison overstates FRA's argument when she claims that it rests on Ellison having technical knowledge.

Moreover, the case that Ellison heavily relies on in her response does not support her argument that the letter in this case fell under the FDCPA. In response, Ellison cites *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 482 (7th Cir. 1997) to support her conclusion that "debts of the sort which defendant sought to collect are debts" under the FDCPA, as if *Newman* should control the outcome of this case. (Pl. Resp., Dkt. No. 40 at 1, 3-4.) But the facts surrounding the letters in *Newman* are easily distinguishable. In that case, the letters did not just seek obligations from property with the risk being loss of possession: the letters sought money directly from the plaintiffs. For instance, the first letter "informed *the Newmans* that *they* were in default on *their* obligation to pay a 'proportionate share of the common expenses' due the association[.]" *Id.* at 479 (emphasis added). Similarly, the second letter "indicated that *the Riters* owed $443.60 to the association and that a certified check in that amount should be sent within ten days." *Id.* (emphasis added). The plaintiffs argued, successfully, that the letters were governed by the FDCPA because "*their* obligation to pay past-due assessments qualifies as a debt[.]" *Id.* at 481 (emphasis added). Precisely the opposite happened here: the letter explicitly demanded payment and obligations from the property, and did not seek payment from Ellison on *her* obligations. Put another way, *Newman* did not hold that letters sent pursuant to section 9-104.1 of the Illinois Forcible Entry and Detainer Act fall under the FDCPA. Rather, it held that debt for condominium assessments is consumer debt if it is incurred for personal or household purposes, and letters seeking to collect that debt *from the debtor* fall under the FDCPA.

In that respect, these facts are closer to *Hahn* than *Newman*. In *Hahn*, the foreclosure proceeding explicitly sought liability from the wife who signed the loan documents—not her

3

husband. *Hahn v. Anselmo Lindberg Oliver LLC*, No. 16 cv 6908, 2017 U.S. Dist. LEXIS 48810, at *2 (N.D. Ill. Mar. 31, 2017). The court held that continuing to litigate the foreclosure despite the husband's intervening bankruptcy did not violate the FDCPA because "the particular foreclosure proceeding challenged here was not an attempt to collect a debt from *Mr.* Hahn, so it cannot have been an unfair or deceptive attempt to evade the automatic stay imposed by Mr. Hahn's bankruptcy." *Id.* at *8 (emphasis in original). The court reiterated that "[e]ven if [the foreclosure] was an attempt to collect a debt, it was not an attempt to collect a debt from Mr. Hahn, so ALO did nothing unfair, false, deceptive or misleading . . . ." *Id.* at *12.

Similarly, Ellison is incorrect that her relationship with the neighborhood association is simply one of debtor-creditor under the FDCPA. Ellison argues that the neighborhood association's rights to the property "does not undermine the fact that owners owed money to [the association] and [the association] used the services of defendant to collect those funds." (Pl. Resp., Dkt. No. 40 at 6-7.) But again, this heavily misconstrues the letter. FRA did not seek to collect the funds from Ellison—the letter explicitly stated that the property was delinquent in its obligations to the association. (Def. Reply to Pl. Statement of Add'l Facts, ¶¶ 3-4, Dkt. No. 32-2 at 49.) And the letter is clear that the potential risk for not curing the delinquent obligations to the association was not further collection: it was loss of possession of the property. (Def. Reply to Pl. Statement of Add'l Facts, ¶ 3, Dkt. No. 32-2 at 49.) The letter was fulfilling a statutory prerequisite to seeking possession of the property and invoking those rights under the Forcible Entry and Detainer Act was not action governed by the FDCPA.

Ellison's willful misreading of the letter is further supported by her analogy to foreclosure actions as debt collection. Ellison argues in response that the *Ho* case is inapplicable, and that other authorities are more on point, because "foreclosure proceedings" constitute debt

4

collection. (Pl. Resp., Dkt. No. 40 at 4-5.) But whether or not foreclosure is debt collection is inapplicable in this case. Foreclosure in Illinois is authorized by a separate statute with a distinct remedy. *See* 735 ILCS 5/15-1504. In contrast, in this case, FRA demanded possession under the Illinois Forcible Entry and Detainer Act, and did not seek any money from Ellison. Similar facts were present in *Ho*: the trustee issued a notice to the plaintiff that "she owed more than $20,000 on her loan", stated that she had the right to bring her account in good standing by paying, and then it issued a notice stating that she could lose ownership of the property if she did not take any action. *Ho v. Recontrust Co., NA*, 858 F.3d 568, 570-71 (9th Cir. 2017). In both cases, the risk identified in the communication was loss of a property, not a money judgment. Identifying steps to be taken to avoid this outcome does not make the communication one under the FDCPA, particularly when statute requires these steps to be identified. *See* 735 ILCS 5/9-104.1. In short, this case is less like the foreclosure cases Ellison cites in response and more like *Ho* because the letter was seeking possession only.

And Ellison's belief that the letter violated the FDCPA cannot stand without interfering with the operation of Illinois law. Ellison argues that there are no constitutional issues at play because the letter could have been written in compliance with the Illinois Forcible Entry and Detainer Act without violating the FDCPA. (Pl. Resp., Dkt. No. 40 at 12-13.) Specifically, she claims that "the state statute merely requires that an association give owners 30 days to satisfy the terms of a demand before an action is filed." (*Id.* at 12.) But this is an unreasonably narrow reading of the statute. Indeed, Ellison concedes that the statute also requires the demand to state the amount claimed and the time periods when the amounts were originally due. (*Id.*) Ellison's entire claim rests on her supposition that the letter violated the FDCPA by referencing payment of past due sums. (Pl. Resp., Dkt. No. 40 at 6.) So, to the extent the letter duly included these

items, they were required to have a valid demand under the statute. Also, there is no indication that including specific language about the bankruptcy, as Ellison interprets it, would have prevented this lawsuit. Ellison speculates that including language that "clearly informed Ellison that she had no personal responsibility for the debt" would have complied with the FDCPA. (Pl. Resp., Dkt. No. 40 at 12.) But in her deposition, she stated that she read the forcible entry complaint—which did include such specific language—"as Joy Ellison is responsible for those expenses." (Def. Reply to Pl. Statement of Add'l Facts, ¶ 16, Dkt. No. 32-2 at 96:17-18.) Thus, it appears that she would have interpreted the letter as violating the FDCPA even if FRA took her stated advice.

Moreover, the *Vincent* and *McCarter* cases do not change this result or hold that there is "no contradiction" between the FDCPA and the forcible entry statute. In both cases, the court held that the defendant's argument that certain language in the letters was statutorily required was beside the point because the statutorily-required language had "nothing to do" with the stated claims. *See Vincent v. Chuhak & Tecson, P.C.*, No. 13 C 7458, 2014 U.S. Dist. LEXIS 52441, at *11 (N.D. Ill. Apr. 16, 2014) ("[w]hether the notice includes information required by Illinois law is beside the point; it has nothing to do with the nature of the confusion alleged by plaintiffs."); *McCarter v. Kovitz Shifrin Nesbit*, 6 F. Supp. 3d 797, 802 (N.D. Ill. 2013) ("[t]he Forcible Entry Act's provision concerning full payment does not render plaintiff's claim 'meritless.' It has nothing to do with the confusion alleged by plaintiff, which is that payment is demanded 'on or before the expiration of thirty (30) days . . . .'"). Those cases did not hold that the FDCPA does not conflict with statutorily-required language in the Illinois Forcible Act: they held that the statutorily-required language did not apply to the claims in those cases.

In short, the letter is plainly not misleading and was not made in connection with an attempt to collect a debt from Ellison. Her interpretation, in contrast, willfully ignores the bulk of the letter with its explicit references to the demand being made of the property.

> B. *Ellison does not attempt to show that a significant portion of the population would be misled other than her own conclusion.*

Even if the letter were not plainly not misleading, it at worst falls in the vast second category of representations that are merely potentially misleading, and Ellison does not attempt to show that a significant portion of the population would be misled by the letter through external evidence. In between communications that are plainly not misleading and those that are plainly misleading is the broad second category of 1692e cases—those where the debt collection language is not misleading or confusing on its face, but might possibly mislead or deceive the unsophisticated consumer. *Moses v. LTD Fin. Servs. I*, No. 16 C 5190, 2017 U.S. Dist. LEXIS 125583, at *5 (N.D. Ill. Aug. 9, 2017). If a case falls into this category, the Seventh Circuit has held that plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive. *Id.* (citing *Ruth v. Triumph P'ships*, 577 F.3d 790, 801 (7th Cir. 2009)). If a communication does not fall into the third category of plainly misleading statements, it means that "either (1) it is so clear that it is not deceptive as a matter of law or (2) inhabits a middle ground where extrinsic evidence is necessary to prove an FDCPA violation." *Id.* at *11-12 (citing *Ruth*, 577 F.3d at 800-01; *see also Sulaiman v. Biehl & Biehl*, No. 15 C 4518, 2016 U.S. Dist. LEXIS 136677, at *15-16 (N.D. Ill. Sept. 30, 2016) (granting summary judgment in the defendant's favor on the plaintiff's section 1692e claim because the plaintiff failed to "adduce evidence that could establish that the challenged statements are misleading to the typical unsophisticated consumer", and so the plaintiff failed to create a genuine issue of material fact as

to the misleading nature of the communications); *Toro v. ICS Collection Serv.*, No. 15 C 732, 2015 U.S. Dist. LEXIS 15685, at *5 (N.D. Ill. Feb. 10, 2015) (holding that even if a communication did not fall into the first category of communications that are plainly not misleading, "the best that [the plaintiff] could hope for is for a second-category characterization.").

FRA contends that the letter at issue in this case was plainly not misleading, because it frequently and explicitly made demands of the property and did not demand payment from Ellison. (Def. Reply to Pl. Statement of Add'l Facts, ¶¶ 3-4, Dkt. No. 32-2 at 49.) But even if the letter is not in the first category, it is not plainly misleading and, at worst, belongs in the second category of 1692e communications that merely have the potential to mislead. For example, in *Moses*, the Court held that the communication was not deceptive on its face, and rejected the plaintiff's analogy to the *Ruth* case that the "only reasonable interpretation" of the notice was an interpretation that violated the FDCPA. *Moses*, 2017 U.S. Dist. LEXIS 125583 at *7. At worst, the same applies here. So summary judgment is still appropriate for FRA because Ellison fails to produce any extrinsic evidence, such as surveys or experts, to establish that a significant faction of the population would in fact be misled by the letter. (Pl. Statement of Facts, Dkt. No. 29; Pl. Statement of Add'l Facts, Dkt. No. 39.)

Ellison's subjective claim of confusion is insufficient to create a genuine issue of fact. For instance, the Seventh Circuit has noted that at summary judgment the plaintiff "must do more than merely speculate about how a naïve debtor would interpret the letter." *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1061 (7th Cir. 2000). And the plaintiff's deposition testimony about her subjective confusion was not enough: "[t]he best [plaintiff] could come up with was her own self-serving deposition testimony that [the

301297397v1 0997622

defendant's] name led her to believe that the company was a credit bureau. This fails to create a genuine issue as to whether a significant fraction of the population would have believed the same thing after reading this letter." *Id.* at 1061-62. The Court concluded that "[t]he self-serving opinion of the plaintiff, clearly not an expert or an objective observer, does not create a genuine issue for trial[,]" and later emphasized that "under the FDCPA, confusion is not in the eyes of the beholder." *Id.* at 1062. Likewise, Ellison cannot rely on her claimed subjective confusion to establish an FDCPA violation. Ellison's frequent references at her deposition to her own confusion do not establish that a significant fraction of the population would think that the letter demanded money of them personally. (Pl. Dep. Trans., Dkt. No. 32-2 at 54:9-13; 67:17-19; 93:11-14; Pl. Resp., Dkt. No. 40 at 2.) She claims that the letter was "inexplicable to plaintiff and to any unsophisticated consumer" (Pl. Resp., Dkt. No. 40 at 6), but she has no extrinsic proof. Without extrinsic evidence to show how the unsophisticated but reasonable debtor would in fact respond to the letter in this case, summary judgment against Ellison is proper.

>  C.   *Even if Ellison's interpretation of the letter were correct, it would not materiality impact her choices.*

Summary judgment should be granted in FRA's favor because the letter did not materially impact Ellison's options regarding the property. The FDCPA is designed to provide information that helps consumers choose intelligently, and "by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Id.* at 757-58 (citing *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1056 (8th Cir. 2002)); *see also Matmanivong v. Unifund CCR Partners*, No. 08 cv 6415, 2009 U.S. Dist. LEXIS 36287, at *13 (N.D. Ill. Apr. 28, 2009) (citing *U.S. v. Bagley*, 473 U.S. 667, 682 (1985)) (noting that the determination of materiality is dependent on whether the information has a reasonable probability of affecting the outcome of the case). To establish

materiality, the plaintiff must show that a reasonable unsophisticated consumer would have done something differently but for the confusing statement. *Marciuleviciene v. Emhurst Lake Apt., LLC*, No. 12 C 1697, 2012 U.S. Dist. LEXIS 86424, at *4 (N.D. Ill. June 21, 2012) (citing *Hahn v. Triumph P'ships, LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009)).

Even if Ellison's interpretation of the letter were correct, it would not materially alter her options regarding the property. Again, her decisions remained the same: if the money were not paid, the association would have the right to take possession of the property against every occupant, including Ellison. *See* 735 ILCS 5/9-110. Indeed, at her deposition Ellison stated three times in a short time span that she did not intend to pay the money identified in the letter. She answered whether she intended to pay the debt "[w]hen [she] got" the letter, once she "checked it out," and whether she intended "to pay that amount referenced in the letter" with the same answer—"No." (Def. Reply to Pl. Statement of Add'l Facts, ¶ 3, Dkt. No. 32-2 at 65:8-21.) Notably, Ellison's claim in response that she was considering giving up possession of the property when she received the letter is not consistent with her deposition testimony. She swore, not that she was deciding whether or not to relinquish possession, but that she was speaking to her mortgage servicer to resolve her delinquent mortgage. (Def. Reply to Pl. Statement of Add'l Facts, ¶ 10, Dkt. No. 32-2 at 57:13-58:19.) And the letter ultimately did not impact her decision because seven months after the letter was sent Ellison entered into an agreed judgment and order for possession in the resulting Forcible Entry and Detainer lawsuit—and the only money mentioned in that judgment was against the property. (Def. Statement of Facts, Dkt. No. 32-4.)

Moreover, Ellison's stated reaction to the letter is remarkably similar to the facts in the *Turner* case, and in that case the court held there was no FDCPA violation due to a post-bankruptcy communication. In *Turner*, after the plaintiff received a bankruptcy discharge, the

10

defendant sent him a letter seeking to collect discharged debt. *Turner v. J.V.D.B. & Assocs.*, 483 F. Supp. 2d 631, 634 (N.D. Ill. 2007). Then, the plaintiff gave the letter to his bankruptcy attorney, but was not concerned because he understood that he did not owe the creditor. *Id.* The court held that, under these circumstances, the letter did not violate section 1692e of the FDCPA because "it did not imply to a reasonably objective, but unsophisticated consumer that the debt discharged in bankruptcy was still payable." *Id.* at 635. The same is true here. Ellison swore that when she received the letter at issue she contacted her bankruptcy attorney. (Pl. Resp., Dkt. No. 40 at 11.) And, again, she stated multiple times in her deposition that she did not intend to pay the amount stated in the letter, either when she got it or when she "checked it out." (Def. Reply to Pl. Statement of Add'l Facts, ¶ 13, Dkt. No. 32-2 at 65:8-21.) Much like the circumstances in *Turner*, the letter in this case would not imply to a reasonably objective but unsophisticated consumer in Ellison's circumstances that the debt was still personally payable.

## II. FRA's motion is not deficient.

FRA's motion for summary judgment is not deficient. Ellison argues that certain citations to her deposition transcript should not be considered because FRA did not specifically mention them in the statement of material facts. (Pl. Resp., Dkt. No. 40 at 3.) As an initial matter, the case Ellison relies on does not actually support her proposition. In *Simpson v. Safeguard Properties, LLC*, the court noted that the defendant's motion for summary judgment did not cite its Rule 56.1 statement, "*or any other evidence*, in support of this contention." No. 13 cv 2453, 2017 U.S. Dist. LEXIS 159667, at *20 (N.D. Ill. Sept. 28, 2017) (emphasis added). That is not the case here, where each reference is accompanied by a citation to the line in the attached transcript where the statement occurs. Moreover, FRA explicitly referenced Ellison's deposition in its statement of facts, specifically that she swore she did not intend to pay the amount stated in the letter (Def. Statement of Facts, Dkt. No. 32 ¶ 15), and it specifically referenced the bankruptcy

301297397v1 0997622

order with references to liens still being operative (*id.* ¶ 9). *See Henry v. TDS Metrocom*, No. 04 C 4888, 2005 U.S. Dist. LEXIS 14493, at *27 (N.D. Ill. July 8, 2005) (rejecting the notion that certain citations to deposition testimony should not have been considered because they were not specifically referenced in the statement of facts because the "cited deposition testimony is attached to both parties' Local Rule 56.1 statements."). Indeed, Ellison responds to these citations on the merits in her brief, and does not argue that these citations are incorrect. (Pl. Resp., Dkt. No. 40 at 8, 10-11.) Finally, the argument does not impact FRA's primary point that the letter itself is plainly not misleading or, at worst, only potentially misleading and Ellison lacks any extrinsic evidence of confusion. Thus, FRA's motion for summary judgment is appropriately before this Court.

WHEREFORE, Defendant Fullett Rosenlund Anderson P.C. respectfully requests that the Court deny Plaintiff's motion for summary judgment, that the Court grant judgment in its favor and against Plaintiff, and/or grant any other relief to the Defendant that is equitable and just.

>Respectfully submitted on behalf of Defendant, Fullett Rosenlund Anderson P.C.
>
>*/s/ Louis J. Manetti, Jr.*
>David M. Schultz
>Jason Santos
>Louis J. Manetti, Jr.
>HINSHAW & CULBERTSON, LLP
>222 N. LaSalle, Suite #300
>Chicago, IL 60601
>Tel: 312-704-3000
>dschultz@hinshawlaw.com
>jsantos@hinshawlaw.com
>lmanetti@hinshawlaw.com

301297397v1 0997622

## **CERTIFICATE OF SERVICE**

  I hereby certify that on March 13, 2018, I electronically filed Defendant, Fullett Rosenlund Anderson P.C"s Reply in Support of its Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, reflecting service to be served upon all parties of record.

                   */s/Louis J. Manetti, Jr.*